IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APRIL TENILLE NORRIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   NO. 3:18-cv-00750 |
| | ) |
| MURFREESBORO LEASED HOUSING | )   JUDGE CAMPBELL |
| ASSOCIATES I, LP d/b/a CHARIOT | ) |
| POINTE APARTMENTS, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff April Tenille Norris, a pro se Tennessee resident, filed this action in August 2018. She has been granted pauper status. The Amended Complaint (Doc. No. 10) is before the Court to determine whether, following the dismissal of two Defendants as parties (*see* Doc. Nos. 24, 36), any claims remain under the screening standard for cases filed in forma pauperis. And as explained below, two claims remain against the Murfreesboro Housing Authority: a reasonable accommodation claim under Title II of the Americans with Disabilities Act, and a due process claim regarding Plaintiff's termination from the Shelter Plus Care Program.

## I. BACKGROUND

### A. Factual Allegations and State Court Proceedings

Plaintiff and her minor child lived at Chariot Pointe Apartments in Murfreesboro, Tennessee. (Doc. No. 1 at 1–2; Doc. No. 10 at 1). Chariot Pointe was owned by Murfreesboro Leased Housing Associated I, LP ("MLHA") (Doc. No. 16 at 2) and managed by Dominium Management Services (Doc. No. 1 at 1–2, 5; Doc. No. 10 at 1, 3). Plaintiff has a "mental health

diagnosis,"[1] and participated in the U.S. Department of Housing and Urban Development's ("HUD") Shelter Plus Care Program, which provides rental assistance to "people with a chronic history of homelessness and severe disabilities." (Doc. No. 10 at 2–3). The Program requires housing providers to consider making reasonable accommodations before evicting a tenant. (*Id.*).

The Murfreesboro Housing Authority ("MHA") is responsible for monitoring compliance with the Shelter Plus Care Program in Rutherford County. (*Id.* at 3). MHA must ensure that program participants have access to "supportive services and optional mental health services." (*Id.*). In this case, MHA required Plaintiff to receive ongoing services for her disability, to be verified at least quarterly by her service provider. (Doc. No. 10 at 8; Doc. No. 10-1 at 49). Plaintiff alleges that she received treatment through the Mental Health Cooperative ("MHC") (Doc. No. 10 at 1–2; Doc. No. 10-1 at 53), and then through Volunteer Behavioral Health System ("VBHS") (Doc. No. 10 at 10; Doc. No. 10-1 at 82).

In October 2016, Plaintiff started asking MHA and MHC for assistance relocating to a new residence because a construction project at Chariot Pointe was negatively affecting her mental health. (Doc. No. 10 at 3, 8–9; Doc. No. 10-1 at 53). In November 2016, Plaintiff submitted a "Notice to Vacate" her apartment on her lease expiration date of February 1, 2017. (Doc. No. 10 at 3; Doc. No. 10-1 at 13). The reason given on the notice was that "the disorganization with construction and management ha[d] caused [her] mental distress." (*Id.*). A handwritten note on the notice states that it was "canceled" on January 7, 2017. (Doc. No. 10-1 at 13).

On February 9, 2017, Plaintiff received a "Notice of Lease Infraction" from Amber Prater, a Community Manger for Dominium Management Services. (Doc. No. 10 at 3; Doc. No. 10-1 at

---

[1] Plaintiff does not explain this diagnosis, but a March 2017 email incorporated into the Amended Complaint (*see* Doc. No. 10 at 6) states that, in 2013, Plaintiff was diagnosed with bipolar disorder, anxiety, obsessive compulsive disorder, attention deficit disorder, and severe depression (Doc. No. 10-1 at 45).

1). The notice stated that Plaintiff's lease would not be renewed because she violated her lease by acting in a loud, obnoxious, or threatening manner at the Chariot Pointe office. (Doc. No. 10-1 at 1). Plaintiff characterizes the asserted lease infraction as "disability related behavior." (Doc. No. 10 at 1). She also alleges that this incident was related to a ten-month delay in repairing Plaintiff's dishwasher and hazardous conditions left by a maintenance technician. (*Id.* at 2).

On February 15, 2017, Plaintiff received a message from Sarah Jane Milliren, a Dominium Regional Manager, stating that Plaintiff was not "100% finished with the recertification." (Doc. No. 10-1 at 2). Milliren also stated that, in Tennessee, Dominium could "give a 3 day notice [of tenancy termination] due to the incident that happened last week," but that Prater had given Plaintiff until February 28. (*Id.*). Milliren stated that she could not "extend past that seeing as it is the most generous time frame allowable." (*Id.*). Plaintiff alleges that Milliren's statement regarding her recertification being incomplete was "false." (Doc. No. 10 at 2).

In March 2017, Plaintiff filed a "Fair Housing Complaint" with the Disability Rights Section of the U.S. Department of Justice, and that section referred it to HUD. (Doc. No. 10 at 12; Doc. No. 10-1 at 42–44). The complaint stated that Deborah Fox, an MHA employee, discriminated against Plaintiff by denying her housing in Rutherford County "[a]s a previously homeless person with a mental disability." (*Id.* at 42–43). Plaintiff again stated that the asserted lease infraction at Chariot Pointe was "caused by [her] mental illness." (*Id.* at 43). According to the HUD complaint, after receiving the notice of non-renewal from Prater, Plaintiff requested help finding alternative housing from the apartment manager, MHA, and MHC. (Doc. No. 10 at 3; Doc. No. 10-1 at 43). However, none of these parties attempted to provide Plaintiff a reasonable accommodation (Doc. No. 10 at 3–4), and Plaintiff received only "the list of properties that they give all tenants" (Doc. No. 10-1 at 43). The HUD complaint also stated that after Plaintiff contacted

3

"local government officials," MHA and apartment managers "attempted to [conduct] unannounced inspections and after hours pre moveout inspections," and her mental health provider requested she take a drug test. (*Id.*).

On April 14, 2017, Plaintiff and Chariot Pointe executed a "Guarantee of Payment Agreement" that specified Plaintiff would pay her total balance owed, including $18 in late fees and a $25 fee for insufficient funds, on or before May 3. (Doc. No. 10-1 at 35). Plaintiff alleges that she attempted to pay this balance, along with her May rent, on May 5, but Chariot Pointe's attorney "refused to accept the payment." (Doc. No. 10 at 4).

On May 9, 2017, Chariot Pointe filed a Detainer Warrant against Plaintiff in the Rutherford County General Sessions Court, seeking possession of Plaintiff's apartment. (Doc. No. 10 at 4; Doc. No. 10-1 at 38). Plaintiff filed a pro se "Sworn Denial," stating that the case should be dismissed for three reasons: (1) Chariot Pointe's attorney did not respond to Plaintiff's attempt to pay on May 5; (2) it was against Section 8 housing guidelines to evict a tenant for late fees and a returned check fee; and (3) the eviction was in retaliation for Plaintiff's complaints about the construction project. (Doc. No. 10 at 6; Doc. No. 10-1 at 40). On May 30, the state court dismissed this case on Plaintiff's motion. (Doc. No. 10-1 at 38). Plaintiff alleges that the dismissal was for failure to "follow the HUD HAP contract eviction procedures" (Doc. No. 10 at 5).

Plaintiff continued to reside at Chariot Pointe but refused to sign another lease. (Doc. No. 10-1 at 47). She alleges that MHA was aware of Chariot Pointe's attempt to evict her, but "failed to address the violation" that led to dismissal of Chariot Pointe's case. (Doc. No. 10 at 5–6; Doc. No. 10-1 at 41). Plaintiff also alleges that MHA "continued making rental assistance payments but refused to assist [her] with finding alternate/replacement housing to remove her and her minor child from the hostile living environment." (Doc. No. 10 at 5).

4

Plaintiff alleges that, in early July 2017, someone stole a laptop computer from her apartment when she was out of town due to "the retaliatory failure to make repairs to the [front] door lock." (Doc. No. 10 at 7; Doc. No. 10-1 at 47). On July 10, Plaintiff filed a civil action against Chariot Pointe in the Rutherford County General Sessions Court, seeking "statutory damages for each Fair Housing violation and HUD HAP contract violation[,] $250 loss of property due to negligence, [and] retaliation." (Doc. No. 16-1 at 2). On August 18, the state court entered a default judgment against Chariot Pointe for $24,999.99 after it failed to respond to Plaintiff's allegations. (Doc. No. 10 at 7; Doc. No. 16-2 at 3).

Also in August 2017, Plaintiff received an email and letter from MHA employee Deborah Fox. The email encouraged Plaintiff to continue paying rent. (Doc. No. 10 at 7; Doc. No. 10-1 at 48). And the letter reminded Plaintiff that the Shelter Plus Care Program required her to "receive ongoing services for [her] disability," to be verified at least quarterly by her service provider. (Doc. No. 10 at 8; Doc. No. 10-1 at 49). The letter stated that, if Plaintiff did not provide contact information for her service provider properly report the value of the services she was receiving, she may not be eligible to receive continued rental assistance. (*Id.*).

On December 21, 2017, MHA issued Plaintiff a voucher to move with the Shelter Plus Care Program. (Doc. No. 10-1 at 71). On January 2, 2018, MHA conducted a "Home Quality Standard" inspection of Plaintiff's apartment. (Doc. No. 10 at 8; Doc. No. 10-1 at 51). MHA found that the apartment did not meet the required standards and warned Chariot Pointe that it would stop making Housing Assistance Payments effective March 1, 2018, unless the unsatisfactory conditions were corrected. (Doc. No. 10-1 at 58). Plaintiff received extensions of her moving voucher through April 30, 2018. (Doc. No. 10 at 9–10; Doc. No. 10-1 at 71–73).

5

Meanwhile, Chariot Pointe appealed the state default judgment to the Rutherford County Circuit Court. (Doc. No. 16-2 at 2–3). On March 23, 2018, it filed a Counterclaim for Possession, Rents, and Other Relief. (Doc. No. 10-1 at 77). Plaintiff alleges that this Counterclaim included "frivolous affidavits that gave [the] false/incorrect material facts to mislead the court to believe that [Plaintiff's] Shelter Plus Care voucher expired on February 28, 2018[,] making her responsible for the full contract rent including the portion that was covered by the [MHA]." (Doc. No. 10 at 10). The Circuit Court entered judgment in Chariot Pointe's favor on May 17 and awarded Chariot Pointe $3,342.90 and possession of Plaintiff's apartment, for which a writ of restitution and execution would be issued on Chariot Pointe's demand. (Doc. No. 10-1 at 88–89). Plaintiff appealed (*id.* at 91–94) but she did not obtain a stay of the Circuit Court's judgment. This appeal was dismissed on January 16, 2019. *See Tennessee State Courts Appellate Case Search*, https://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=73456&Party=True, Order entered Jan. 16, 2019 (last visited Oct. 20, 2020).

On April 23, 2018, Plaintiff completed a "Request for Reasonable Accommodation" form with MHA regarding her moving voucher that was set to expire on April 30. (Doc. No. 10 at 10; Doc. No. 10-1 at 81–83). Plaintiff's form requested additional time to locate housing and an increase in the allowance from two bedrooms to three, to accommodate Plaintiff's "Vocational Rehabilitation Employment Goals." (*Id.*). Plaintiff authorized MHA to verify her request through a VBHS employee. (Doc. No. 10-1 at 82–83).

On August 7, 2018, the Rutherford County Circuit Court issued a Writ of Restitution for Chariot Pointe to obtain possession of Plaintiff's apartment. (Doc. No. 1 at 7). On August 10, the Rutherford County Sheriff's Office notified Plaintiff that she must immediately vacate the apartment through a "Final Notice Eviction Order." (*Id.* at 11).

6

**B. Proceedings in this Court**

On August 10, 2018—the same day she received the Final Notice Eviction Order—Plaintiff filed the Original Complaint in this Court. (Doc. No. 1). She sued: (1) MLHA; (2) Chariot Pointe Apartments; (3) Dominium Management Services; (4) MHA; and (5) VBHS. (*Id.* at 1–2). Plaintiff asserted claims for herself and her minor daughter under the Rehabilitation Act, the Fair Housing Act ("FHA"), and the Tennessee Consumer Protection Act ("TCPA"). (*Id.* at 3, 5). Plaintiff also sought a temporary restraining order ("TRO") to prevent eviction. (Doc. No. 3).

The Court granted Plaintiff pauper status, denied the TRO motion, and denied the claims Plaintiff brought on behalf of her minor child. (Doc. No. 5; Doc. No. 6 at 5). The Court also denied the claims against Dominium, MHA, and VBHS because the Original Complaint did not include any factual allegations against them. (Doc. No. 6 at 5). Liberally construing the Original Complaint, however, the Court allow Plaintiff's FHA discrimination claim against MLHA and Chariot Pointe to proceed for further development. (*Id.* at 6–7).

Soon thereafter, Plaintiff filed an Amended Complaint. (Doc. No. 10). She sued the same five parties plus: (1) the City of Murfreesboro; (2) the Rutherford County Sheriff's Department; and (3) MHC. (*Id.* at 1). Plaintiff re-asserted claims for herself and her minor daughter under the Rehabilitation Act, the FHA, and the TCPA. (*Id.*). She also brought new claims under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, the United States Housing Act, the Americans with Disabilities Act ("ADA") (*id.*), and several federal housing programs (*id.* at 4). Plaintiff requests ten million dollars. (*Id.* at 12).

Defendants MLHA and Chariot Pointe filed a Motion to Dismiss. (Doc. Nos. 15, 16). The Magistrate Judge recommended that these two parties be dismissed based on the doctrine of res judicata, concluding that Plaintiff's claims against these two Defendants either were or could have

7

been litigated in the prior state-court proceedings. (Doc. No. 23). The Court adopted this recommendation and dismissed MLHA and Chariot Pointe as parties. (Doc. Nos. 24, 36). The Court will now review the remaining claims in the Amended Complaint under the screening standard for cases filed in forma pauperis.

## II. LEGAL STANDARD

The Court may dismiss any complaint filed in forma pauperis if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). In doing so, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations consisting of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. ANALYSIS

With the dismissal of MLHA and Chariot Pointe, there are six remaining Defendants: Dominium Management Services, MHA, MHC, VBHS, the City of Murfreesboro, and Rutherford County Sheriff's Department. (Doc. No. 10 at 1; Doc. No. 36). Before addressing Plaintiff's specific claims against these Defendants, the Court reiterates that a parent can only bring suit on behalf of a minor child through an attorney. (*See* Doc. No. 6 at 5; Doc. No. 35 at 4–5). Accordingly,

8

Plaintiff, who is acting pro se, may not advance claims on behalf of her minor child. All such claims have been denied without prejudice for the reasons previously stated by the Court. (*See id.*).

**A. Dominium Management Service**s

First, Plaintiff's claims against Dominium Management Services are barred by the doctrine of res judicata. Although res judicata is "an affirmative defense that should be raised by the defending party" as a matter of "both federal and Tennessee law," *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F.3d 747, 757 (6th Cir. 2003) (citations omitted), "a court may take the initiative to assert the res judicata defense sua sponte in 'special circumstances.'" *Id.* (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). This includes circumstances where a plaintiff has been put "on notice of a potential res judicata defense," *id.* at 757, and "had the opportunity to identify dissimilarities between the state and federal suits," *id.* at 758. That is the case here, as MLHA and Chariot Pointe's Motion to Dismiss squarely raised the defense and the Court previously considered Plaintiff's arguments on the issue. (*See* Doc. No. 35 at 5–7.)

As the Court has explained, "[w]hen a defense of res judicata is based on a prior state judgment, federal courts apply the law of the state in which the judgment was rendered." (Doc. No. 35 at 5 (citing *Holbrook v. Shelter Ins. Co.*, 186 F. App'x 618, 620 (6th Cir. 2006)). In Tennessee, "[t]he doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." (*Id.* at 5–6 (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)).

The only parties to the prior state court litigation were Plaintiff and Chariot Pointe. And the record before the Court does not explicitly describe the relationship between Dominium and Chariot Pointe. Nonetheless, it is clear that a Dominium employee sent Plaintiff the "Notice of

9

Lease Infraction" for her Chariot Pointe apartment dated February 9, 2017, and subsequently communicated with Plaintiff regarding the attempted termination of her tenancy. Thus, for practical purposes, it appears that the entity referred to as "Chariot Pointe Apartments" in the state court litigation was defending conduct attributable to Dominium Management Services.

Moreover, the Court previously adopted the Magistrate Judge's recommendation that res judicata bars Plaintiff's claims against not just Chariot Pointe, but also MLHA, based on the conclusion that MLHA was in privity with Chariot Pointe under Tennessee state law. (Doc. No. 23 at 7–8; Doc. No. 24; Doc. No. 36). In this context, "the concept of privity relates to the subject matter of the litigation," and "connotes an identity of interest, that is, a mutual or successive interest to the same rights." *Brooks v. Whirlpool Corp.*, 499 F. App'x 450, 452 (6th Cir. 2012) (quoting *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000)). Under this same rationale, to the extent that Chariot Pointe and Dominium are interchangeable parties for purposes of the state court action because Plaintiff dealt with Dominium employees in the dispute over the Chariot Pointe apartment, the Court concludes that they were privies. Thus, Plaintiff's claims against Dominium will be denied for the same reasons as her claims against Chariot Pointe and MLHA.

**B. Murfreesboro Housing Authority**

Plaintiff also brings this action against MHA, the entity responsible for monitoring compliance with the Shelter Plus Care Program. MHA provided Plaintiff housing assistance payments through the Program.

The precise nature of Plaintiff's asserted claims against MHA is not entirely clear. Liberally construing the Amended Complaint, however, the Court understands Plaintiff to be asserting that MHA violated her rights under: the Shelter Plus Care Program (*id.* at 4); Section 8

10

of the Housing Act of 1937 ("Section 8") (*id.*); Section 504 of the Rehabilitation Act (*id.*); the FHA (*id.* at 1); the TCPA (*id.*); the ADA (*id.*); the anti-retaliation provisions of the Rehabilitation Act and the ADA (*id.* at 12); and the Due Process Clause of the Fourteenth Amendment (*id.* at 1). The Court will address these claims in turn.

    1. <u>Shelter Plus Care and Section 8 Programs</u>

Plaintiff asserts that MHA violated her rights under both the Shelter Plus Care Program and Section 8 by failing to "assist or advocate for [her] at any point during the attempts from Chariot Pointe to evict [her] without good cause." (Doc. No. 10 at 3–4). But these "are distinct programs, administered separately and [] subject to different regulatory requirements." *Price v. Rochester Hous. Auth.*, No. 04-CV-6301P, 2006 WL 2827165, at *2 (W.D.N.Y. Sept. 29, 2006). The Shelter Plus Care Program is authorized by the McKinney Homeless Assistance Act ("McKinney Act"), *see* 24 C.F.R. § 582.1(a), while Section 8 is authorized by the United States Housing Act. *See* 42 U.S.C. § 1437 et seq. Here, the record reflects that Plaintiff was a participant in the Shelter Plus Care Program, not Section 8. (*See* Doc. No. 10-1 at 49 (August 2017 letter from MHA to Plaintiff stating Plaintiff was "housed through a Shelter Plus Grant that provides housing for homeless and disabled persons"); *id.* at 53–57, 73 (January and March 2018 emails from Plaintiff signed as an "Aggrieved Shelter Plus Care Program Participant")). Because Plaintiff was not a participant in Section 8, Plaintiff's attempt to hold MHA liable for violating requirements of Section 8 is misguided.

To decide whether Plaintiff states a claim against MHA under the Shelter Plus Care Program, the Court must determine whether individual beneficiaries of the Program have a private right of action to assert claims for violations of the Program's requirements. Under 42 U.S.C. § 1983, a plaintiff may assert a claim for the deprivation of "rights, privileges, or immunities secured

by the Constitution *and laws*." *Johnson v. City of Detroit*, 446 F.3d 614, 627 (6th Cir. 2006) (emphasis in *Johnson*) (quoting 42 U.S.C. § 1983). "Federal statutes are clearly 'laws' within the meaning of § 1983." *Id.* (collecting cases). However, "only unambiguously conferred rights, as distinguished from mere benefits or interests, are enforceable under § 1983." *Westside Mothers v. Olszewski*, 454 F.3d 532, 541–42 (6th Cir. 2006) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002)).

To determine whether a federal statute confers a private cause of action under Section 1983, the Court considers whether: (1) "Congress intended the provision to benefit the plaintiff"; (2) "the protected right is sufficiently definite for courts to enforce"; and (3) "the statute imposes a binding obligation on the states using mandatory, rather than precatory, terms." *Barry v. Lyons*, 834 F.3d 706, 716 (6th Cir. 2016) (citing *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). In considering these factors, the Court looks to "whether the pertinent statute contains 'rights-creating' language that reveals congressional intent to create an individually enforceable right." *Westside Mothers*, 454 F.3d 532 at 542 (quoting *Gonzalez*, 536 U.S. at 285).

Here, Plaintiff asserts that MHA violated the Shelter Plus Care Program by failing to help her or advocate for her during Chariot Pointe's attempts to evict her. She seems to essentially contend that, because MHA is responsible for monitoring compliance with the Program, it must ensure that "supportive services and optional mental health services are provided to its program participants." (Doc. No. 10 at 3). Thus, the Court must evaluate whether the portions of the relevant statutes pertaining to supportive services create a private cause of action.

The statutes that authorized[2] the Shelter Plus Care Program are 42 U.S.C. §§ 11403–11407b of the McKinney Act. *See* 24 C.F.R. § 582.1(a). Prior to its repeal, Section 11403 stated

---

[2]    The Shelter Plus Care Program has since "been consolidated with other federal homelessness assistance grant programs into a single program called 'Continuum of Care.'" *G.S. v. Lorilee I, LLC*, No.

that the Program's purpose was "to provide rental housing assistance, in connection with supportive services funded from sources other than this part, to homeless persons with disabilities (primarily persons who are seriously mentally ill, have chronic problems with alcohol, drugs, or both, or have acquired immunodeficiency syndrome and related diseases) and the families of such persons." 42 U.S.C. § 11403 (2010). Section 11403a authorized "[t]he [HUD] Secretary . . . to provide rental housing assistance" "in accordance with the provisions of" the federal code referring to the Program. *Id.* § 11403a(a). As to supportive services, Section 11403b required a "recipient"— defined elsewhere as "a State, unit of general local government or public housing agency" "approved for participation in the" Program, *id.* § 11403g(2), (8)—to "supplement the assistance provided under this part with an equal amount of funds for supportive services from sources other than this part." *Id.* § 11403b(a)(1). This section authorized the HUD Secretary to "recapture any unexpended housing assistance" "[i]f the supportive services and funding for the supportive services required by this section [were] not provided." *Id.* § 11403b(b).

The Court is unaware of any prior case considering whether these particular statutes contain the type of "rights-creating" language that establishes an enforceable right of action under Section 1983. But the Sixth Circuit has held that similar language in another federal housing law does not create such a right. In *Johnson v. City of Detroit*, the plaintiff alleged that defendants violated Section 8's requirements "by failing to provide decent, safe, and sanitary housing." 446 F.3d at 625 (citing 42 U.S.C. §§ 1437, 1437f). The Sixth Circuit found that the relevant statutes either "present[ed] broad policy statements regarding the federal government's goals," *id.* at 626 (footnote omitted) (citing 42 U.S.C. § 1437), or they had "an aggregated focus on the entity being regulated" rather than "individual tenants." *Id.* at 627 (citing 42 U.S.C. § 1437f). "Although

<hr />

15-cv-30203-MGM, 2016 WL 7093435, at *1 n.2 (D. Mass. Nov. 14, 2016) (citing 42 U.S.C. §§ 11381–11407b), *report and recommendation adopted*, 2016 WL 7045701 (D. Mass. Dec. 2, 2016).

residents of public housing undoubtedly 'benefit[ted]' from the statutory provisions at issue," the Court explained, "statutory text that merely benefits putative plaintiffs is insufficient to confer a new federal right under § 1983." *Id.* (citing *Gonzaga*, 536 U.S. at 283).

Here, as in *Johnson*, the statutes authorizing the Shelter Plus Care Program focused on the government's goals or the entities regulated rather than individual beneficiaries. In particular, the Program's supportive service requirements were directed at the HUD Secretary and "recipient[s]," meaning "State[s], unit[s] of general local government or public housing agenc[ies]." 42 U.S.C. §§ 11403a(a), 11403b, 11403g(2), (8) (2010). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)). The Court therefore concludes that Plaintiff does not have a private right of action to enforce the supportive service requirements of the Shelter Plus Care Program. Accordingly, Plaintiff fails to state a claim against MHA on this basis.

2. Rehabilitation Act

Next, Plaintiff asserts that MHA's failure to "assist or advocate for" her during Chariot Pointe's eviction attempts also violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. No. 10 at 3–4). This statute provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Based on this statutory text, a discrimination claim under Section 504 requires a plaintiff to allege "differential treatment 'solely by reason of' [the] individual's disability." *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc). Plaintiff does not

14

allege facts plausibly supporting the inference that MHA was motivated "solely by reason of" her disability during Chariot Pointe's eviction attempts or its decision to terminate Plaintiff from the Shelter Plus Care Program. Accordingly, Plaintiff fails to state a discrimination claim under the Rehabilitation Act.

　　　3. Americans with Disabilities Act

Plaintiff also asserts that her eviction from Chariot Pointe Apartments and termination from the Shelter Plus Care Program violated the ADA. (Doc. No. 10 at 1). The Court considers Plaintiff's ADA claim under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Sixth Circuit has held that "[t]wo types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Comm'rs*, 870 F.3d 471, 488 (6th Cir. 2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)).

　　　A. Intentional Discrimination

"To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citation and footnote omitted).

Here, even assuming that Plaintiff was disabled and otherwise qualified to participate in the Shelter Plus Care Program, she does not satisfy the causation requirement. To establish

15

causation, a plaintiff must provide allegations giving rise to the reasonable inference that "animus against the protected group was a significant factor in the position taken by the [] decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id.* (quoting *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)). Plaintiff alleges that Chariot Pointe—not MHA—attempted to evict her for "disability related behavior" (Doc. No. 1 at 5), and that she then requested assistance from MHA. Thus, Plaintiff does not allege that MHA denied her Program benefits to which she was entitled because of her disability. Accordingly, Plaintiff fails to state an ADA discrimination claim against MHA.

### B. Reasonable Accommodation

As to reasonable accommodations under Title II, "public entities must . . . 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Tri-Cities Holdings LLC v. Tenn. Admin. Proc. Div.*, 726 F. App'x 298, 308 (6th Cir. 2018) (quoting 28 C.F.R. § 35.130(b)(7)(i)). As this language reflects, "[a]n accommodation is not reasonable if it imposes a fundamental alteration in the nature of the program," and "[t]he public entity bears the burden of proving that the accommodation would fundamentally alter the program." *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 480 (6th Cir. 2003) (citations omitted), *overruled on other grounds by Lewis*, 681 F.3d at 317.

Here, Plaintiff alleges that she requested reasonable accommodations from MHA at least three times: first, following Chariot Pointe's initial eviction attempt in February 2017 (Doc. No. 10 at 3–4; Doc. No. 10-1 at 43); second, in December 2017, when MHA issued a voucher to move with the Shelter Plus Care Program (Doc. No. 10 at 8; Doc. No. 10-1 at 52, 71); and third, in April

2018, through an MHA form titled "Request for Reasonable Accommodation - Certification of Need" (Doc. No. 10 at 10; Doc. No. 10-1 at 81). On the first two occasions, Plaintiff requested assistance locating an alternative residence, and on the third occasion, she requested an extension of time to locate housing and an increase in the size of the moving voucher.

At this stage in the proceedings, the Court cannot determine whether these requested accommodations are related to benefits or services that MHA was actually responsible for providing Plaintiff as a participant in the Shelter Plus Care Program. And as a matter of law, Plaintiff cannot state a claim against MHA for failing to provide accommodations necessary for Plaintiff to receive benefits MHA was not responsible for providing. *See Tri-Cities*, 726 F. App'x at 315 (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985)) ("[T]he scope of a benefit cannot be so 'amorphous' as to sweep in protection against all possible outcomes."). Nonetheless, liberally construing Plaintiff's allegations in her favor, the Court cannot conclude that Plaintiff fails to state a claim on this basis at this juncture. Accordingly, Plaintiff's reasonable accommodation claim will be allowed to proceed for further development.

4. Fair Housing Act

Plaintiff next asserts a claim under the FHA. (Doc. No. 10 at 1). Among other things, the FHA prohibits discrimination against any person "because of a handicap" "in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2). The discrimination proscribed by this subsection relates to three particular circumstances: (1) "a refusal to permit . . . reasonable modifications of existing premises occupied or to be occupied . . . if such modifications may be necessary to afford . . . full enjoyment of the premises"; (2) "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford . . . equal

17

opportunity to use and enjoy a dwelling"; or (3) "in connection with the design and construction of" certain "multifamily dwellings for first occupancy." *Id.* § 3604(f)(3).

Here, Plaintiff does not allege that MHA was responsible for renting or managing Plaintiff's dwelling at Chariot Pointe. Thus, MHA was not in a position to discriminate against Plaintiff in the manner contemplated by this subsection of the FHA—modifying her apartment, allowing accommodations for equal use and enjoyment of her apartment, or designing and constructing new units. Accordingly, Plaintiff fails to state a claim against MHA under the FHA.

### 5. Tennessee Consumer Protection Act

Plaintiff also asserts a claim under the TCPA. (Doc. No. 10 at 1). As the Court previously explained, "the only provision of the TCPA that might be implicated by Plaintiff's allegations" is Tenn. Code Ann. § 47-18-104(b)(25), which proscribes "[d]iscriminating against any disabled individual . . . in violation of the Tennessee Equal Consumer Credit Act of 1974." (*See* Doc. No. 6 at 8–9). A plaintiff asserting a TCPA claim "must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *9 (W.D. Tenn. July 2, 2013) (collecting cases). Thus, a TCPA plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Plaintiff does not allege with particularity that MHA engaged in conduct prohibited by the Equal Consumer Credit Act. Plaintiff, accordingly, fails to state a TCPA claim against MHA.

### 6. Retaliation

Plaintiff asserts that "agencies"—which the Court construes to mean MHA—retaliated against her for filing a complaint "against discriminatory housing practices." (Doc. No. 10 at 12). The Court assumes Plaintiff is referring to the "Fair Housing Complaint" she filed in March 2017. (*See* Doc. No. 10-1 at 42–44). Plaintiff does not specify the statute under which she is pursuing

this retaliation claim, but an exhibit incorporated by reference into the Amended Complaint suggests that the Fair Housing Complaint raised issues under the ADA and Section 504 of the Rehabilitation Act. (Doc. No. 10 at 4; Doc. No. 10-1 at 44).

"Both the ADA and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697–98 (6th Cir. 2013) (citations omitted). The Sixth Circuit generally considers retaliation claims under these statutes together. *See id.* at 697. To state a prima facie retaliation claim, Plaintiff must allege that: (1) she engaged in activity protected under the ADA and Section 504; (2) MHA knew of this protected activity; (3) MHA then took adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Id.* (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)).

The burden of establishing a prima facie claim of retaliation is "not onerous," *id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)), but Plaintiff does not meet it here. Even assuming that Plaintiff's March 2017 Fair Housing Complaint constituted protected activity, Plaintiff simply fails to allege that MHA was aware of it. Because Plaintiff has not established the requisite knowledge or causal connection, her retaliation claim against MHA will be denied.

7. <u>Due Process</u>

Finally, Plaintiff asserts that MHA terminated her from the Shelter Plus Care Program without due process. (Doc. No. 10 at 1; Doc. No. 10-1 at 102). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332

19

(1976)). A participant in the Shelter Plus Care Program has a legitimate property interest in the continued receipt of benefits under the due process clause. *See Price*, 2006 WL 2827165, at *6 (collecting cases supporting the proposition that a plaintiff's "interest in the Shelter Plus Care rental subsidy . . . plainly is a protectible property interest deserving of due process protection"); s*ee also Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015) (collecting cases supporting the proposition that Section 8 participants have legitimate property interests under the due process clause). Indeed, a statute governing the Shelter Plus Care Program provided that, when terminating an individual's benefits under the Program, that individual "shall [be] provide[d] a formal process that recognizes the rights of [Program participants] to due process of law." 42 U.S.C. § 11403f(b) (2010).

Because the termination of Shelter Plus Care benefits "implicates a constitutionally protected interest, 'the question remains what process is due.'" *Doe*, 882 F.3d at 599–60 (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)). To answer that question, the Court considers three factors:

> (1) "the private interest that will be affected by the official action";
>
> (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and
>
> (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 600 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Additionally, a regulation implementing the Shelter Plus Care Program provides that "[r]ecipients"—again, meaning "State[s], unit[s] of general local government or public housing agenc[ies]," 42 U.S.C. §§ 11403g(2), (8) (2010)—"must exercise judgment and examine all

20

extenuating circumstances in determining when violations are serious enough to warrant termination, so that a participant's assistance is terminated only in the most severe cases." 24 C.F.R. § 582.320(a). "In terminating assistance to a participant," a "recipient" must provide process that includes, at a minimum:

> (1) Written notice to the participant containing a clear statement of the reasons for termination;
>
> (2) A review of the decision, in which the participant is given the opportunity to present written or oral objections before a person other than the person (or a subordinate of that person) who made or approved the termination decision; and
>
> (3) Prompt written notice of the final decision to the participant.

*Id.* § 582.320(b).

Here, Plaintiff alleges that she was terminated from the Shelter Plus Care Program (Doc. No. 10 at 1), and the Court is unable to determine from the face of the pleadings whether MHA provided Plaintiff the minimum process due in these circumstances. Accordingly, Plaintiff's due process claim against MHA will not be denied at this juncture.

## C. Mental Health Cooperative

Plaintiff alleges that she asked MHC for help finding alternative housing in late 2016. (Doc. No. 10 at 3; Doc. No. 10-1 at 53). She also alleges that MHC failed to provide "supportive services to prevent [her] from being evicted" (Doc. No. 10 at 12), apparently including refusing her request for anxiety medication in mid-2017 (*id.* at 8; Doc. No. 10-1 at 54). Plaintiff specifically asserts that MHC's alleged failures violated Section 811 of the Cranston-Gonzalez National Affordable Housing Act, 42 U.S.C. § 8013. (Doc. No. 10 at 4).

"[T]he Section 811 Program of Supportive Housing for Persons with Disabilities provide[s] Federal capital advances and project rental assistance . . . for housing projects serving . . . persons with disabilities." 24 C.F.R. § 891.100(a). Under this program, Section 811 project

owners must "ensure that the residents are provided with any necessary supportive services that address their individual needs." *Id.* However, Plaintiff does not allege, and the exhibits to the Amended Complaint do not reflect, that she or Chariot Pointe Apartments participated in the Section 811 Program. Instead, as explained above, the record reflects that Plaintiff was a participant in the Shelter Plus Care Program while she lived at Chariot Pointe. Accordingly, as with Section 8, Plaintiff may not assert a claim against MHC for violating Section 811.

Plaintiff also generally asserts that her eviction from Chariot Pointe, and her termination from the Shelter Plus Care Program, violated her due process rights and several statutes. (Doc. No. 10 at 1). But Plaintiff's allegations do not reflect that MHC—an organization responsible for providing Plaintiff supportive mental health services while she was a participant in the Program— was actually responsible for evicting Plaintiff or terminating Plaintiff from the Program. And to the extent that Plaintiff is attempting to assert a claim against MHC for failing to comply with the supportive service requirements of the Program, such a claim is not viable for the reasons stated above. *Supra* Section III.B.1. For all of these reasons, Plaintiff fails to state a claim against MHC.

**D. Volunteer Behavioral Health System**

In evaluating the Original Complaint, the Court denied Plaintiff's claims against VBHS because Plaintiff did not allege any facts against it. The Amended Complaint adds a single allegation regarding VBHS: that VBHS "completed" a Request for Reasonable Accommodation on Plaintiff's behalf. (Doc. No. 10 at 10). Through this request, Plaintiff sought "to locate housing and enhance voucher size to accommodate [her] vocational rehabilitation employment goals." (*Id.*). A review of the attached exhibit reflects that Plaintiff, not VBHS, completed this request form, and that the form authorized MHA to contact a VBHS employee to verify Plaintiff's request. (Doc. No. 10-1 at 82–83).

22

It is unclear what claim Plaintiff may be asserting against VBHS on this basis, and the Court cannot readily discern one. Thus, the addition of this single allegation regarding VBHS in the Amended Complaint is insufficient to state a claim. *See Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (citing *Codd v. Brown*, 949 F.2d 879, 882 (6th Cir. 1991)) ("A failure to identify a right, privilege or immunity that was violated merits dismissal of the cause of action for failure to state a claim upon which relief can be granted.").

### E. The City of Murfreesboro and Rutherford County Sheriff's Department

In the Amended Complaint, Plaintiff explains that she added the City of Murfreesboro and the Rutherford County Sheriff's Department as Defendants because Rutherford County caused her "irreparable damage" through its "fraudulent scheme to steal money from vulnerable tenants" and "the United State government." (Doc. No. 10 at 12). This conclusory assertion of liability for the City and the Sheriff's Department is insufficient to state a claim. *See Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 341 (6th Cir. 2015) (quoting Fed. R. Civ. P. 9(b)) ("[W]hen alleging fraud, 'a party must state with particularity the circumstances constituting' the fraud."); *see also Perry*, 90 F. App'x at 861 (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.3d 434, 437 (6th Cir. 1988)) ("A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."). Accordingly, the City of Murfreesboro and the Rutherford County Sheriff's Department will be dismissed as parties.

### IV. CONCLUSION

For these reasons, the Court concludes that the Amended Complaint states two colorable claims against the Murfreesboro Housing Authority: a reasonable accommodation claim under Title II of the Americans with Disabilities Act, and a due process claim regarding Plaintiff's termination from the Shelter Plus Care Program. It is unclear at this point whether Plaintiff will

ultimately prevail on these claims. Rather, at this stage, the Court concludes that these two claims survive screening under the standard for cases filed in forma pauperis. The remaining claims and Defendants are **DISMISSED**.

The Court's determination that the Amended Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to oversee service of process on the Murfreesboro Housing Authority, enter a scheduling order for the management of the case, dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under the Federal Rules of Civil Procedure and the Local Rules of Court. *See* Fed R. Civ P. 72; Local Rules 72.01, 72.02.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

24